UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ACADIA INSURANCE COMPANY,   )
as subrogee of ELDREDGE LUMBER )
AND HARDWARE, INC.,      )
            )
      Plaintiff,    )
            )
    v.       )    2:15-cv-00008-JAW
            )
FLUID MANAGEMENT, INC.,    )
et al.,          )
            )
      Defendants.   )

**ORDER ON MOTION TO DISMISS**

In this subrogation action, an insurance company filed a complaint against a paint mixer manufacturer and an electric motor manufacturer for a fire at a hardware store. The insurance company paid the hardware store owner in excess of $379,996 for the loss and now seeks to recover that amount from these manufacturers. The electric motor manufacturer moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The Court denies the motion because the insurer's complaint states a plausible claim for relief.

## I.   PROCEDURAL HISTORY

On November 20, 2014, Acadia Insurance Company (Acadia), as subrogee of Eldredge Lumber and Hardware (Eldredge Lumber), filed a complaint against Fluid Management and Merkle-Korff Industries (Merkle-Korff) in York County Superior Court, containing three counts: (1) negligence, (2) strict liability, and (3) breach of implied warranty of merchantability, all in violation of Maine law.  *Compl.* at 4-6

(ECF No. 2-2).  On December 19, 2014, Merkle-Korff filed its answer in York County Superior Court.  *Answer* (ECF No. 2-3).  On January 7, 2015, Merkle-Korff removed the case to this Court pursuant to 28 U.S.C. § 1332.  *Notice of Removal* (ECF No. 1).

On January 18, 2015, Merkle-Korff filed a motion to dismiss the Complaint.  *Def. Merkle-Korff Industries, Inc.'s Mot. to Dismiss* (ECF No. 14) (*Defs.' Mot.*).  Acadia responded on February 16, 2015.  *Pl., Acadia Insurance Company a/s/o Eldredge Lumber and  Hardware Inc.'s Opp'n to Def. Merkle Korff Industries, Inc.'s Mot. to Dismiss* (ECF No. 15) (*Pl.'s Opp'n*).  On March 3, 2015, Merkle-Korff replied.  *Def. Merkle-Korff Industries, Inc.'s Mot. to Dismiss Reply Mem.* (ECF No. 17) (*Defs.' Reply*).  On March 6, 2015, Fluid Management filed a motion to dismiss, joining in Merkle-Korff's motion.[1]  *Def. Fluid Management, Inc.'s Mot. to Dismiss* (ECF No. 18).

## II.   THE ALLEGATIONS AND THEORIES OF ACTION IN THE COMPLAINT

### A.   The Allegations in the Complaint

Acadia is a New Hampshire insurance company licensed in Maine with its principal place of business in Maine.  *Compl.* ¶ 1.  Fluid Management is an Illinois corporation with its principal place of business in Illinois; Merkle-Korff is a Delaware corporation with its principal place of business in Delaware.  *Id.* ¶¶ 3, 4.

Acadia says it insured Eldredge Lumber's property in York, Maine, namely a hardware store.  *Id.* ¶¶ 2, 9.  Acadia claims that before March 28, 2012, Eldredge

---

[1]      On March 6, 2015, the Court notified the parties that it would consider Fluid Management's motion as a joinder in Merkle-Korff's motion to dismiss, not a motion itself.  The major impact of this notice was to avoid the periods for motion, response and reply contemplated by the Rules.  Because Fluid Management adopted by reference Merkle-Korff's motion and memorandum, the Court treats Merkle-Korff's motion as filed by both Defendants.

Lumber purchased from Fluid Management an Accutinter Model 7016 paint mixer that contained an electric motor designed, manufactured, and sold by Merkle-Korff. *Id.* ¶¶ 7, 8. On March 18, 2012, Acadia says, the paint mixer and/or the electric motor malfunctioned and caused a fire. *Id.* ¶ 10. Acadia claims that the fire was caused by the failure of the paint mixer and/or its electric motor, and says that the fire caused significant damage to the hardware store and business income losses. *Id.* ¶¶ 11, 12. Acadia paid Eldredge Lumber in excess of $379,996 for damages as a result of the fire, and it is pursuing the subrogated loss amount in this proceeding. *Id.* ¶¶ 13, 14.

### B.   The Counts

In Count One, Acadia alleges that the paint mixer and electric motor were defective and unreasonably dangerous to users or consumers and to their property, and that the defects caused the fire at the hardware store. *Id.* ¶¶ 16, 17. Acadia claims that the fire and damages Eldredge Lumber suffered were the result of the negligent design and manufacture of the paint mixer and electric motor. *Id.* ¶ 18.

In Count Two, Acadia seeks relief under Maine's product liability statute, 14 M.R.S. § 221. It says that Fluid Management sold the paint mixer and electric motor within it to its insured, Eldredge Lumber, in a defective condition unreasonably dangerous to users or consumers and to their property, and that Merkle-Korff sold the electric motor, that was supplied with the paint mixer, in a defective condition unreasonably dangerous to users or consumers and to their property. *Id.* ¶¶ 20, 21. Acadia submits that Fluid Management and Merkle-Korff should have reasonably expected Eldredge Lumber to be affected by the paint mixer and electric motor. *Id.*

3

¶ 22.   Acadia alleges that Eldredge Lumber sustained damages as a direct and proximate cause of the Defendants' sale of the defective paint mixer and/or electric motor.  *Id.* ¶ 22.

In Count Three, Acadia alleges that both Fluid Management and Merkle-Korff were "merchants" as defined in 11 M.R.S. § 2-104.1 and that they sold the paint mixer and electric motor in violation of their implied warranty of merchantability under 11 M.R.S. § 2-314.  *Id.* ¶¶ 25, 26.  Finally, Acadia says, Eldredge Lumber sustained damages as a direct and proximate result of the Defendants' breach of the implied warranty of merchantability.  *Id.* ¶ 27.

## III.   THE PARTIES' POSITIONS

### A.   The Defendants' Motion to Dismiss

The Defendants' motion is premised on an argument that the Complaint states no facts that would plausibly show that a defect in a product they sold caused the fire at the hardware store.  *Defs.' Mot.* at 4.  They contend that Acadia's Complaint offers only "labels and conclusions" and "naked assertions" insufficient to survive its motion.  *Id.*

Regarding the negligence count, the Defendants submit it is unclear from the Complaint how they breached a duty they owed to Acadia when they put the electric motor in the chain of commerce, or how that breach caused the fire.  *Id.* at 5.  Further, they argue, it is unclear whether Acadia seeks to recover for negligent design or negligent manufacture or both, because the Complaint does not describe or define what was defective about the paint mixer and/or electric motor.  *Id.*

The Defendants contend that the strict liability claim in Count Two must also fail because Acadia has neither established that the product was defective, nor alleged any facts that would allow the Court to infer how the electric motor was defective. *Id.* at 6-7. The Defendants argue that "[m]ere allegations that the paint mixer 'or' the electric motor malfunctioned [are] not sufficient." *Id.* at 7.

Finally, the Defendants argue that Acadia failed to properly allege that the electric motor was defective at the time it was sold, and therefore the breach of warranty count must be dismissed. *Id.* They say that allegations that they are "merchants", that the motor was in a "defective condition", and that it was the cause of Plaintiff's injuries and damages, are insufficient under the *Twombly*[2] and *Iqbal*[3] pleading standards to survive dismissal. *Id.* at 8.

## B.   Acadia's Opposition

Acadia contends first that the Defendants' motion is untimely and should be denied. *Pl.'s Opp'n* at 3. Acadia says that a motion filed pursuant to Rule 12(b)(6) must be made before pleading if a responsive pleading is allowed, and that the Defendants' motion is untimely because Merkle-Korff filed it after filing its Answer. *Id.*

Second, Acadia maintains that it has properly pleaded claims for negligence, strict liability, and breach of implied warranty of merchantability, and that the Defendants' arguments are premature and more appropriate for a summary judgment motion. *Id.* at 4-10. Acadia submits that it does not need to offer a detailed

---

[2]     *Bell Atlantic v. Twombly*, 550 U.S. 544 (2009).
[3]     *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

explanation as to how the motor was negligently designed and/or manufactured, nor does it need to describe precisely how the motor was defective or unreasonably dangerous. *Id.* at 7-8.

### C.   The Defendants' Reply

The Defendants acknowledge that their motion "technically" may no longer be a Rule 12(b)(6) motion, and ask the Court to use its discretion and consider the motion as a request for judgment on the pleadings pursuant to Rule 12(c). *Defs.' Reply* at 2-3.

## IV.   DISCUSSION

This Court has diversity of citizenship jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1). The amount in controversy, without interest and costs, exceeds $75,000, the sum or value specified in 28 U.S.C. § 1332(a).

### A.   Rule 12(c) Standard of Review

The Defendants filed their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) after the deadline for responsive pleadings, and after Merkle-Korff filed its answer. Acadia correctly points out that this motion was untimely because "[a] motion asserting [a defense listed in Rule 12(b)] must be made before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b). The Court will treat the motion under Rule 12(b)(6) as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Patrick v. Rivera-Lopez*, 708 F.3d 15, 18 (1st Cir. 2013) ("Instead of deciding the motion under Rule 12(b)(6), the district court should have treated it as a motion for judgment on the pleadings under Federal Rule of Civil

6

Procedure 12(c)").  However, "[t]his conversion does not affect [the Court's] analysis inasmuch as the two motions are ordinarily accorded much the same treatment." *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 54 (1st Cir. 2006).

As with a motion to dismiss, to withstand a motion for judgment on the pleadings, a complaint must contain enough factual allegations so that the claim is "plausible on its face," *Twombly*, 550 U.S. at 555–56; that is, the factual content pled should "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Additionally, the Court must "view the facts contained in the pleadings in the light most favorable to the party opposing the motion . . . and draw all reasonable inferences in [that party's] favor." *Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007).  "There is, of course, a modest difference between Rule 12(c) and Rule 12(b)(6) motions.  A Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." *Aponte–Torres*, 445 F.3d at 54–55.  "Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Id*. at 54.

Because Acadia's Complaint is the only source of the pertinent facts, and because none of the parties suggests the claims require heightened pleading standards, *see* FED. R. CIV. P. 9(b), the Complaint need only comply with the standards of Rule 8 of the Federal Rules of Civil Procedure.  *See Aponte-Torres* at 55.  Pursuant to Rule 8(a), the plaintiff's complaint must set forth "a short and plain

7

statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A "short and plain" statement needs only enough detail to provide a defendant with "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). "Despite the liberal pleading standard of Rule 8, to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" *Gallagher v. Cigna Healthcare of Maine, Inc.*, 538 F. Supp. 2d 286, 290 (D. Me. 2008) (quoting *Twombly*, 550 U.S. at 559).

### B.  Count II:  Strict Liability Pursuant to 14 M.R.S. § 221[4]

Count II of Acadia's Complaint asserts a claim for strict liability pursuant to 14 M.R.S. § 221:

> 20.   Defendant, Fluid Management, sold the Paint Mixer and Electrical Motor within it to Plaintiff's insured Eldredge Lumber in a defective condition that was unreasonably dangerous to users or consumers and to their property.

> 21.   Defendant, Merkle-Korff, sold the Electric Motor which was supplied with the Paint Mixer in a defective condition that was unreasonably dangerous to users or consumers and to their property.

> 22.   Plaintiff's insured, Eldredge Lumber, was at all times relevant hereto an entity that the Defendants should have reasonably expected to be affected by the Paint Mixer and its Electric Motor, or who owned property that may be so affected.

> 23.   As a direct and proximate result of the Defendants['] sale of the defective Paint Mixer and/or Electric Motor, Plaintiff's insured sustained the damages outlined above.

---

[4]   Although Acadia's Complaint listed the negligence claim before the strict liability claim, the Court analyzes the counts in reverse order because the negligence analysis is informed by the product liability analysis.

*Compl.* ¶¶ 20-23.  Maine's strict liability statute provides:

> One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold.  This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

14 M.R.S. § 221.

The Defendants seek to dismiss Acadia's strict liability claim on the ground that it insufficiently alleges what specific theory of recovery Acadia will pursue under strict liability (manufacturing defect, design defect, or failure to warn), and that the Complaint does not provide facts that would allow the Court to infer how the electric motor was defective or how it was unreasonably dangerous.  *Defs.' Mot.* at 6-7.  Acadia vigorously opposes dismissal.  *See Pl.'s Opp'n* at 6-7.

The Defendants correctly point out that no liability will be imposed in a strict liability action unless the product is defective.  *See Adams v. Buffalo Forge Co.*, 443 A.2d 932, 940 (Me. 1982) (Noting that the Maine legislature "formulated our strict liability statute, 14 M.R.S.A. § 221, directly from section 402A of the after Restatement (Second) of Torts"); RESTATEMENT (SECOND) OF TORTS § 402A.  However, Acadia alleged that the electric motor was defective, which defeats the Defendants' argument on this point.

9

Next, the Defendants urge that more detail regarding the alleged defect is necessary to withstand their motion. They rely on a 1992 First Circuit decision to support their argument that "mere allegations that the paint mixer 'or' the electric motor 'malfunctioned' [are] not sufficient." *Defs.' Mot.* at 7 (citing *Walker v. Gen. Elec. Co.*, 968 F.2d 116 (1st Cir. 1992)).

*Walker*, however, does not carry the day for the Defendants. First, the *Walker* Court was not addressing the granting of a motion to dismiss. In *Walker*, the First Circuit affirmed the district court's granting of a motion for directed verdict[5] pursuant to Federal Rule of Civil Procedure 50(a) after the district court had held a full trial on the case. *See Walker*, 968 F.2d at 117.

Second, the *Walker* Court addressed the so-called "malfunction theory" "whereby proof of a malfunction may be used as evidence to establish a defect." *Id.* at 120. The malfunction theory:

> is simply a specific application of the general rules of proof in products liability cases in that a plaintiff may meet the burden of proving a defect either by pointing to some specific dereliction by the manufacturer in the design or construction of the product or "by showing an unexplained occurrence and eliminating all reasonable explanations for the occurrence other than the existence of a defect." *Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp.*, 726 F.2d 121, 124 (3d Cir. 1984). Plaintiff remains with the burden of negating other reasonable explanations for the malfunction.

*Id.* Thus, even under the *Walker* formulation, the Plaintiff survives dismissal.

Third, after *Walker*, in 2012 the Law Court expressly adopted the approach of Restatement (Third) of Torts: Products Liability § 3. *Estate of Pinkham v. Cargill,*

---

[5]    Now known as a motion for judgment as a matter of law. *See* FED. R. CIV. P. 50(a), advisory committee note (1991).

2012 ME 85 ¶ 19, 55 A.3d 1; *see McIlvaine v. Ford Motor Co.*, 2013 WL 588934, at *3 (D. Me. Feb. 13, 2013).   According to the Restatement (Third) of Torts: Products Liability § 3:

> It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff:
>
> (a) Was of a kind that ordinarily occurs as a result of product defect; and
>
> (b) Was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution.

RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 3 (1998).   Thus, in *Pinkham*, the Maine Supreme Judicial Court vacated the trial court's granting of a motion for summary judgment where no specific defect had been alleged because the evidence could have led to the inference that the product was defective and the plaintiff was "entitled to the opportunity to have a fact-finder decide whether it should receive the benefit of the inference." *Pinkham*, 2012 ME 85 ¶ 20, 55 A.3d 1.

Here, Acadia alleged that the motor malfunction caused a fire and damage to the hardware store and the Defendants have not yet argued that other causes are to blame.   At this stage, the Court infers that properly designed and built motors do not catch fire absent a defect.   Viewing the facts in the light most favorable to Acadia, the Court concludes that the allegations are sufficient to generate an inference that a defect was the cause of the damages and to withstand a motion to dismiss.   Acadia does not have to allege the precise type of defect in the motor to survive a Rule 12(c) motion.

### C.    Count I:  Common Law Negligence

In Count I, Acadia asserts the following in support of its negligence claim, in relevant part:

> 7.     Prior to March 28, 2012, Eldredge Lumber purchased an Accutinter Model 7016 paint mixer (hereinafter "Paint Mixer") from Fluid Management for use at the Property.
>
> 8.     The Paint Mixer contained an electric motor which was designed, manufactured and sold by Merkle-Korff (hereinafter "Electric Motor").
>
> 10.    On March 18, 2012, the Paint Mixer and/or Electric Motor at the Property malfunctioned and caused a fire.
>
> 11.    The Fire was caused by the failure of the Paint Mixer and/or its Electric Motor.
>
> 12.    The Fire caused significant damage to the Property and its contents and resulted in a loss of business income.
>
> 16.    The Paint Mixer and Electric Motor within it were defective and unreasonably dangerous to users or consumers and to their property.
>
> 17.    The defects of the Paint Mixer and its Electric Motor caused the fire at the Property.
>
> 18.    The fire and damages incurred by Eldredge Lumber were the result of the negligent design and manufacture of the Paint Mixer and Electric Motor by the defendants.

*Compl.* ¶¶ 7, 8, 10-12, 16-18.

Under Maine common law, a plaintiff must establish the following to generate a prima facie case of negligence: a duty owed to plaintiff by defendant, and a breach of that duty that was the actual and legal cause of plaintiff's injury.  *Brown v. Crown Equip. Corp.*, 2008 ME 186, ¶ 15, 960 A.2d 1188.  The Law Court has noted that "[i]n actions based upon defects in design, negligence and strict liability theories overlap in that under both theories the plaintiff must prove that the product was defectively

designed thereby exposing the user to an unreasonable risk of harm." *Stanley v. Schiavi Mobile Homes, Inc.*, 462 A.2d 1144, 1148 (Me. 1983).

"Under Maine law, the existence of a duty is a question for the court, not the fact finder." *Carolina Cas. Ins. Co. v. Cummings Agency, Inc.*, 932 F. Supp. 371, 372 (D. Me. 1996). "A manufacturer or seller owes a duty to exercise reasonable care to foreseeable users of its products and to persons who are foreseeably endangered by the use of those products." *Doe v. Solvay Pharms., Inc.*, 350 F. Supp. 2d. 257, 263 (D. Me. 2004) (citing *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 939 (Me. 1982)). Merkle-Korff owed this duty of reasonable care to foreseeable purchasers, including Eldredge Lumber, in manufacturing the electric motor that was part of the paint mixer.

Seeking dismissal, the Defendants argue that "it is entirely unclear" how they breached their duty to Acadia, or how such a breach caused the fire and resulting damages. *Defs.' Mot.* at 5. The Defendants also argue that Acadia "does not describe or define what was defective about the mixer and/or motor." *Id.* In response, Acadia insists that it properly pleaded a plausible claim of negligence and that the Defendants' arguments are premature. *Pl.'s Opp'n* at 8.

Again, viewing the evidence in the light most favorable to Acadia, the Complaint contains evidence of a breach of duty in the manufacturing of the motor. Acadia alleges that the paint mixer that Fluid Management sold contained an electric motor that Merkle-Korff designed and manufactured that was both defective and unreasonably dangerous. The Defendants may not contend at this stage that the

13

electric motor was not defective, and instead they may claim only that Acadia has not alleged facts identifying the specific defect in the motor.

For the same reasons that the Defendants' motion to dismiss the strict liability count fails, their motion on the negligence count meets the same fate. The negligence analogue to the malfunction theory is res ipsa loquitor and the Maine Supreme Judicial Court has observed that "negligence and strict liability theories overlap in that under both theories the plaintiff must prove that the product was defectively designed thereby exposing the user to an unreasonable risk of harm". *Stanley v. Schiavi Mobile Homes, Inc.*, 462 A.2d 1144 (Me. 1983) (citation omitted). "As with strict liability, Plaintiffs' failure to identify a specific defect is not necessarily fatal if they can negate other reasonable causes and, as they have done here, present circumstantial evidence of a defect. They have produced sufficient evidence to meet their burden on this record to make out a negligence claim." *Moores v. Sunbeam Prods.*, 425 F. Supp. 2d 151, 158 (D. Me. 2006).

### D.   Count III:  Breach of Implied Warranty of Merchantability Pursuant to 11 M.R.S. § 2-314

Acadia asserts a claim of breach of implied warranty of merchantability in Count III of its Complaint:

25.    At all times relevant hereto, Defendants, Fluid Management and Merkle-Korff, were "merchants" with respect to the Paint Mixer and Electric Motor as defined by 11 M.R.S.A. § 2-104.1.

26.    By reason of the foregoing allegations, Defendants, Fluid Management and Merkle-Korff, sold the Paint Mixer and Electric Motor in a defective condition in violation of their implied warranty of merchantability imposed under 11 M.R.S.A. § 2-314.

27.     As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability as outlined above, Plaintiff's insured sustained the injuries and damages outlined above.

*Compl.* ¶¶ 25-27.

Maine law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 11 M.R.S. 2-314(1). In their motion, the Defendants argue that Acadia offers no facts to support its allegation that the electric motor was defective. *Defs.' Mot.* at 7-8. The Defendants again rely on *Walker* for the proposition that Acadia must show "some defect in the product at the time it was sold" in order to maintain a claim for breach of implied warranty of merchantability. *Id.* at 7 (citing *Walker*, 968 F. 2d at 119). Acadia rejects the Defendants' arguments and insists that the motion be denied. *Pl.'s Opp'n* at 9-10.

In its Complaint, Acadia alleged that the Defendants are both merchants within the definition in 11 M.R.S. § 2-104.1, that they sold the Accutinter paint mixer and the electric motor within it, that the paint mixer and/or motor were defective, and that the defect caused the fire and Eldredge Lumber's damages. This is sufficient to properly allege a breach of the implied warranty of merchantability and to survive a motion to dismiss. *See* Donald J. Alexander, Maine Jury Instruction Manual, § 7-23 (4th Ed. 2012) (setting forth the elements of a breach of implied warranty of merchantability claim).

## V.     CONCLUSION

Acadia's Complaint adequately pleads claims of negligence, strict liability, and breach of the implied warranty of merchantability sufficient to survive a motion to dismiss.  The Court DENIES the Defendants' Motion to Dismiss (ECF No. 14).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of June, 2015

16