UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ACADIA INSURANCE COMPANY, | ) | |
| as subrogee of ELDREDGE LUMBER | ) | |
| AND HARDWARE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:15-cv-00008-JAW |
| | ) | |
| FLUID MANAGEMENT, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION TO AMEND COMPLAINT**

Now that both parties are satisfied that a plastic wire nut caused a paint mixer to catch fire and burn down a hardware store, the Plaintiff, the hardware store's insurer, seeks a late amendment to its Complaint to add an allegation that the Defendant, the seller and servicer of the paint machine, improperly serviced the machine by installing the defective wire nut. Even though the Plaintiff's motion to amend the complaint is untimely, the Court concludes there is good cause to grant it because the Plaintiff acted with due diligence in seeking information that should have revealed the existence of the Defendant's service contract and maintenance records and because the prejudice to the Defendant from a focused and brief period of discovery is justified to determine who is responsible for the wire nut that caused the fire.

I.  **BACKGROUND**

On November 20, 2014, Acadia Insurance Company (Acadia) filed a complaint in York County Superior Court for the state of Maine against Fluid Management, Inc. (Fluid Management) and Merkle-Korff Industries (Merkle-Korff), alleging that they were civilly liable for damages to Eldredge Lumber and Hardware (Eldredge), an Acadia insured, resulting from a fire on March 18, 2012. *State Ct. R.* Attach. 1 *Docket R. York Superior Ct.*, Attach. 2 *Compl.* (ECF No. 2). Acadia claimed that the fire started in a paint mixer sold by Fluid Management and containing a motor manufactured by Merkle-Korff. *Compl.* at 1-6. On January 7, 2015, Fluid Management removed the case to this Court. *Notice of Removal* (ECF No. 1). On November 2, 2015, the parties filed a stipulation of dismissal, dismissing Merkle-Korff with prejudice from the case. *Stip. of Dismissal of Def. Merkle-Korff Indus., Inc., Only* (ECF No. 39).

On January 20, 2015, the Court through the Magistrate Judge issued a Scheduling Order. *Sch. Order* (ECF No. 11) (*January Sch. Order*). The Order set February 17, 2015 as the deadline for initial disclosure; April 7, 2015 as the deadline for amendment of the pleadings and the deadline for expert designation for Acadia; May 12, 2015 as the deadline for expert designation for Fluid Management; June 23, 2015 as the deadline to complete discovery; June 30, 2015 as the deadline to file a notice of intent to file summary judgment; and July 14, 2015 as the deadline for all

dispositive motions and *Daubert*[1] and *Kumho*[2] motions.  *Id.* at 2-3.  An October 2015 trial date was anticipated.  *Id.* at 3.

On June 23, 2015, the parties filed a joint motion to amend the scheduling order.  *Joint Pet. to Modify the Sch. Order* (ECF No. 23).  On June 29, 2015, the Magistrate Judge granted the motion and extended the discovery deadline to September 30, 2015 but warned the parties that he expected all the discovery to be completed by the new September 30, 2015 deadline.  *Order* (ECF No. 27).  He also extended certain other deadlines: the notice of summary judgment deadline was extended to October 7, 2015; the dispositive/*Daubert*/*Kumho* motion deadline was extended to October 21, 2015; and the trial-ready date was extended to November 30, 2015, with an anticipated trial date during the month of December 2015.  *Id.*

On October 1, 2015, the parties again moved for scheduling extensions.  *Joint Mot. to Modify the Sch. Order* (ECF No. 33).  On October 20, 2015, the Magistrate Judge expressly allowed some additional discovery to be undertaken within specific deadlines but rejected the parties' request to extend the discovery, summary judgment notice, and dispositive motion deadlines.  *Report of Hr'g and Order Re: Mot. to Modify Sch. Order* (ECF No. 37).  The Magistrate Judge indicated he would revisit the deadlines once the parties had completed the authorized discovery.  *Id.*

On November 5, 2015, the Magistrate Judge held a further telephone hearing on the status of the case.  *Report of Hr'g and Order Re: Status* (ECF No. 44).  He reset the deadlines as follows: (1) December 15, 2015, the deadline to complete discovery;

---

[1]     *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).
[2]     *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

(2) December 15, 2015, the deadline to produce Local Rule 44 records; (3) December 18, 2015, the deadline to file a notice of intent to file summary judgment; (4) December 18, 2015, the deadline to file dispositive and *Daubert/Kumho* motions; and he set February 2016 as the expected trial date. *Id.* at 1-2.

On November 13, 2015, Attorney Hopkins, representing Acadia, wrote the Court on behalf of both parties, stating that they had been unable to schedule the depositions of Fluid Management's experts before the expiration of the December 15, 2015 discovery deadline and requesting a status conference. *Letter from Att'y Michael J. Hopkins to the Hon. John H. Rich, II* (Nov. 13, 2015) (ECF No. 48). Magistrate Judge Rich held a telephone conference on November 23, 2015. *Min. Entry* (ECF No. 50). Magistrate Judge Rich fashioned an order to move the case along. *Report of Hr'g and Order Re: Sch.* (ECF No. 51). He ordered counsel to file any notice of intent to file motions under *Daubert* and/or *Kumho* by December 18, 2015, the same day the notice of intent to file a motion for summary judgment was due. *Id.* at 1. He noted that if a notice of intent to file a motion for summary judgment is filed, the case will be scheduled for a Local Rule 56(h) conference and the Court would discuss both the motion for summary judgment and any *Daubert/Kumho* motions at the conference. *Id.* at 1-2. However, if no summary judgment notice were filed, the Magistrate Judge set deadlines for any *Daubert/Kumho* motions. *Id.* He noted that absent filed motions, the case would remain on the February 2016 trial list. At the close of the Order, the Magistrate Judge noted: "Attorney Hopkins intends to file a motion for leave to amend the complaint to add an additional claim in the very near future. The

4

usual responsive filing deadlines will apply if and when that motion is filed." *Id.* at 2.

On November 25, 2015, Acadia filed a motion for leave to amend the complaint. *Pl.'s Mot. for Leave to File an Am. Compl.* (ECF No. 53) (*Pl.'s Mot.*). Acadia contended that it recently discovered that Fluid Management not only sold the paint mixing machine but also serviced the machine; this fact led to Acadia's argument that Fluid Management's faulty preventative maintenance and repairs of the paint mixing machine contributed to the fire. *Id.* at 5-6. Acadia wished to amend its Complaint to broaden the allegation against Fluid Management to include negligent service, repair, inspection and/or maintenance of the paint mixer. *Id.* Attach. 1 *Am. Compl.* (ECF No. 53).

Fluid Management filed a response on December 16, 2015. *Def. Fluid Mgmt., Inc.'s Opp'n to Pl.'s Mot. to Am. Compl.* (ECF No. 57) (*Def.'s Opp'n*). Fluid Management revealed that:

> After his deposition and after reading the report of Fluid Management's experts, Plaintiff's expert realized for the first [time] that rather than being caused by a defect in the motor[,] the fire was caused by a plastic wire nut that an unknown person improperly installed on a wire at some unknown point after the machine was sold. . . . Experts for both sides now agree that fire was caused by the wire nut.

*Id.* at 1. Fluid Management argued that Acadia's motion is untimely and that the amendment would be futile. *Id.* at 2-6.

On December 28, 2015, Acadia filed a reply, urging the Court to reject Fluid Management's contentions. *Pl.'s Reply in Supp. of its Mot. for Leave to File an Am. Compl.* (ECF No. 61) (*Pl.'s Reply*).

5

On December 30, 2015, Fluid Management filed a Local Rule 56(h) memorandum, indicating that it intended to file a motion for summary judgment (and perhaps a motion to exclude expert testimony) and proposed the following briefing schedule: (1) January 30, 2016—Fluid Management's motions due; (2) February 25, 2016—Acadia's opposition due; and (3) March 10, 2016—Fluid Management's reply. *Pre-Filing Conference Mem. Regarding Mot. for Summ. J.* (ECF No. 62) (*Pre-Filing Mem.*). The Court scheduled a Local Rule 56(h) conference for January 21, 2016. *Procedural Order* (ECF No. 60).

## II.   DISCUSSION

### A.   Applicable Law

Under the January 26, 2015 Scheduling Order, the deadline for amending the pleadings in this case expired on April 7, 2015 and has never been extended. *January Sch. Order* at 2. The parties recognize that "Rule 16(b)'s 'good cause' standard, rather than Rule 15(a)'s 'freely give[n]' standard, governs motions to amend filed after scheduling order deadlines." *Trans-Spec Truck Serv. v. Caterpillar, Inc.*, 524 F.3d 315, 327 (1st Cir. 2008); *Pl.'s Mot.* at 4-5; *Def.'s Opp'n* at 3; *see also* FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent"). As the First Circuit explained,

> A motion to amend a complaint will be treated differently depending on its timing and the context in which it is filed. . . . As the case progresses and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting. Scheduling orders, for example, typically establish a cut-off date for amendments (as was apparently the case here). Once a scheduling order is in place, the liberal default rule is replaced by the more demanding "good cause" standard of Fed. R. Civ. P. 16(b). *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154-55 (1st Cir.

6

> 2004). This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent. *Id.*

*Steir v. Girl Scouts of the USA*, 383 F.3d 7, 11-12 (1st Cir. 2004) (footnotes omitted); *see also Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013) (setting out the same standard).

### B.   Acadia's Due Diligence

Assessing the moving party's due diligence often requires the Court to follow the parties down a rabbit hole. Typically, the moving party claims that the respondent violated the rules of discovery, and the respondent answers in kind by asserting its own innocence and laying blame on the moving party. The Court is often faced with the language of recrimination.

Here, Acadia accuses Fluid Management of failing to promptly turn over requested discovery. *Pl.'s Mot*. at 2. Acadia says that it first learned about Fluid Management's preventive maintenance service agreement at the September 17, 2015 deposition of Fluid Management's expert, Hamilton Laurent. *Id.* Acadia contends that Fluid Management failed to turn over the service agreement until November 18, 2015 and the paint mixer's maintenance records until October 26, 2015. *Id.* at 3-4.

In its opposition, Fluid Management notes that the paint machine was installed almost ten years ago, and in response to this new issue, Fluid Management was required to "search at the 11th hour through old storage boxes of documents looking for old service records and to date has had limited success in finding them . . . ." *Def.'s Opp'n* at 4. Fluid Management says that the service technicians who

performed the work have left the company, and it has been unable to find them. *Id.* It also claims that the amendment would be futile because Acadia has "not asserted facts to support if/how [Fluid Management was] negligent [in its] inspection, maintenance, service and/or repair." *Id.* at 6.

In its reply, Acadia asserts that Fluid Management has asked the Court "to reward [it] for its failure to comply with its discovery obligations under the Federal Rules of Civil Procedure." *Pl.'s Reply* at 1. Acadia says that at the deposition of Ryan Hanawalt on December 1, 2015, Fluid Management revealed for the first time that a Fluid Management service spreadsheet for the Eldredge paint mixer "existed or could be generated" and that Fluid Management produced additional records on December 15, 2015, the last day of discovery. *Id.* at 2. Characterizing Fluid Management's position on maintenance as a defense, Acadia maintains that Fluid Management should have identified and disclosed these records as early as February 2015. *Id.* at 3. Acadia also says that Fluid Management should have produced the service agreement and the maintenance records in response to Acadia's request for production of documents. *Id.* at 4.

The Court is chary of attempting to unravel the history of discovery in this case. Short of placing the lawyers under oath and asking what they knew and when they knew it, there is no good way to determine whether Acadia asked the right questions and whether Fluid Management gave the right responses. For example, the Court is skeptical about Acadia's assertion that Fluid Management's service

agreement and maintenance records would constitute a defense that should have been automatically revealed in discovery.

The Court is more sympathetic to Acadia's argument that its request for production, which asked for "[a]ll documents relating or referring to the make, model, and serial number of the Product," *Pl.'s Reply* Attach. 4 *Def. Fluid Management, Inc.'s Resps. to Pl.'s Req. for Produc.*, at 2 (ECF No. 61), should have disclosed the existence of Fluid Management's service agreement and service records. From the recitation of the parties, the Court finds that Acadia did not find out about the service agreement and maintenance records until September to December, 2015 and that Fluid Management should have revealed the existence of those documents on July 16, 2015 when it responded to Acadia's request for production of documents. The Court is unable to conclude that Acadia should have been more diligent in securing documents that it did not know existed. It may well be that Fluid Management has a good explanation for why these documents were not produced earlier, but the focus at this point is on whether Acadia as the moving party was reasonably diligent, not on whether Fluid Management was.

In short, the Court finds that Acadia was reasonably diligent in seeking the documents that now form the basis of its motion to amend the complaint.

### C. Prejudice to Fluid Management

The Court accepts Fluid Management's contention that it will suffer some prejudice from such a late amendment to the Complaint. No doubt Fluid Management would be better off if it did not have to defend Acadia's claim that its

9

service of the paint machine caused the fire. Even so, based on the record before the Court, it is difficult to assess the extent of that prejudice. There will necessarily be some delay in the resolution of this case as a result of the amended pleading. By Fluid Management's proposed schedule, however, it intends to file a motion for summary judgment, which will not be ready for decision until March 10, 2016 at the earliest. *Pre-Filing Mem.* at 1. Thus, there is a built-in lag in the disposition of this case.

Moreover, it appears from the filings that the experts in this case—both Acadia's and Fluid Management's—have agreed on the cause for the fire, namely the plastic wire nut that someone installed on the paint mixer. The critical question is whether Acadia is able to put the plastic wire nut in the hands or under the oversight of Fluid Management. To this end, the discovery should focus on Fluid Management's maintenance records to determine whether they reveal the installation of the plastic wire nut, the whereabouts and recollections of the Fluid Management technicians who serviced the paint mixer, and any attempts by Eldredge or others to service the paint machine.

From the parties' submissions, a short period of focused discovery on the plastic wire nut should effectively resolve the dispute, either exonerating or implicating Fluid Management. The Court anticipates that the additional discovery necessary to resolve this narrow factual issue should be time-limited, intense, and direct.

### D.     Futility

Fluid Management is correct that a court should deny a motion to amend a complaint if the amendment is futile. *Giuffre v. Deutsche Bank Nat'l Trust Co.*, 759 F.3d 134, 139 (1st Cir. 2014); *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) (a motion to amend should be denied as futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted"). In its response, Fluid Management cites the deposition of Acadia's expert, where he acknowledged that he did not know "when and by whom the wire nut was installed," and asserts that Acadia will be unable to prove its case. *Def.'s Opp'n* at 4-5. But the standard for futility at this stage is not whether the plaintiff will be able to prove its allegations but whether the complaint states a claim upon which relief may be granted, "the same standard of legal sufficiency as [the court] applies to a Rule 12(b)(6) motion." *Glassman*, 90 F.3d at 623 (citation omitted). Here, Acadia's Complaint, as amended, would survive a motion to dismiss. *See* FED. R. CIV. P. 8(a)(2) (requiring "a short and plain statement of the claim").

In Fluid Management's response, it also says that "if the amendment is allowed, the defendant will be filing a motion to exclude [Acadia's expert's] opinion and for summary judgment." *Def.'s Opp'n* at 5. Fluid Management is, of course, free to do so after the brief, renewed period of discovery during which the mystery of the origin of the plastic wire nut may be resolved. In any event, Fluid Management's objections to problems of proof attendant to the allegations in the Amended Complaint will be better addressed in its contemplated motion for summary

11

judgment, where the Court is allowed to look beyond the allegations of the complaint. At this stage, however, the Court rejects Fluid Management's contention that Acadia's proposed amendment to the Complaint would be futile.

Nor is the Court impressed with Fluid Management's protests that the Amended Complaint is not sufficiently specific to place it on notice of the alleged defect. *Def.'s Opp'n* at 5-6. Elsewhere, Fluid Management acknowledges that the experts have agreed that "the fire was caused by a plastic wire nut." *Id.* at 1. Fluid Management then asserts that "an unknown person improperly installed . . . a wire at some unknown point after the machine was sold." *Id.* Fluid Management must know that Acadia's claim has now narrowed to whether it is responsible for the plastic wire nut, either by actually installing the wire nut or by failing to properly inspect the paint mixer to detect the improper installation.

### E.   Rule 56(h) Conference

In anticipation of the Rule 56(h) conference on January 21, 2016, the Court directs the parties to immediately initiate focused discovery on the gravamen of Acadia's amended allegations, to advise the Court as to their progress, and if necessary, to present the Court with a discovery plan at the January 21, 2016 conference, including the then-current status of discovery and any proposed additional deposition and document requests. The Court will review any proposals for further discovery to determine whether such discovery is essential to the resolution of the lawsuit. The Court reminds counsel of their respective obligations

under Rule 26(e)(1) to immediately supplement their discovery responses in light of the new allegations in the Amended Complaint.

To clarify the status of this case in light of this Order, the Court will schedule a telephone conference with counsel.

### III.   CONCLUSION

The Court GRANTS Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 53).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of January, 2016