UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ACADIA INSURANCE COMPANY, as subrogee of ELDREDGE LUMBER AND HARDWARE, INC., <br><br> Plaintiff. <br><br> v. <br><br> FLUID MANAGEMENT, INC., <br><br> Defendant. | ) ) ) ) ) ) ) )  2:15-cv-00008-JAW ) ) ) ) ) |

**ORDER DENYING MOTION TO EXCLUDE
PLAINTIFF'S EXPERT WITNESS**

The Court denies a motion to exclude an expert witness. The Court concludes that the objection to a portion of the expert's proposed testimony is an objection to the probative value of the evidence underlying his opinion, which is a matter for jury resolution, and the Court finds that the remaining portion of the objected to expert testimony would be helpful to the trier of fact.

**I.    BACKGROUND**

The parties are now satisfied that a plastic wire nut caused a paint mixer to catch fire and burn down a hardware store. Acadia Insurance Company, the hardware store's insurer, is proceeding against Fluid Management, Inc. (FMI), the seller and servicer of the Accutinter paint mixing machine, on the grounds that FMI either improperly installed the wire nut or failed to notice the wire nut during its servicing of the machine. *Pl.'s First Am. Compl.* (ECF No. 64).

Acadia listed John J. Mulcahy, a professional engineer, as an expert witness. Mr. Mulcahy issued an amended expert report on October 30, 2015, in which he expressed the opinion that "the most likely cause of ignition causing electrical beading and the fire in the paint machine" was an "irregular wire nut connection." *Pl.'s Resp. in Opp'n to Def.'s Mot. to Exclude the Test. of John Mulcahy*, Attach. 5, *Addendum 1, Expert Report of John J. Mulcahy, P.E.* at 3 (ECF No. 75). Mr. Mulcahy also opined that the irregular wire nut connection was not part of the factory installation, and he excluded the designer and manufacturer of the paint machine as being responsible for the fire. *Id.* Noting that the wire nut was located "in the middle span of the wires that went to the stir motors," he wrote that "[t]he presence of the wire nut in this location indicates that this was an improper modification or repair to the paint machine wiring." *Id.* at 4.

## II.   THE PARTIES' POSITIONS

### A.   FMI's Motion

On March 16, 2016, FMI moved to exclude Mr. Mulcahy as an expert witness. *Mot. to Exclude Test. of Pl.'s Expert John Mulcahy* (ECF No. 73) (*Def.'s Mot.*). Citing Mr. Mulcahy's deposition testimony, FMI notes that Mr. Mulcahy admitted that he "was unable to determine when the wire nut was installed, by whom it was installed, whether it was present when FMI or its agents performed maintenance on the machine and that he lacked the expertise to say whether or not a technician would have been able to even see the wire nut or touch it while doing the preventive maintenance." *Id.* at 2 (citing Attach. 1, *Dep. of John J. Mulcahy, P.E.* 29:12–30:25,

40:12–41:5) (*Mulcahy Dep. I*). Based on these concessions, FMI contends that Mr. Mulcahy's expert opinions are speculative and should be excluded.[1] *Id.*

### B. Acadia's Response

Acadia responded on April 6, 2016. *Pl.'s Resp. in Opp'n to Def.'s Mot. to Exclude the Test. of John Mulcahy* (ECF No. 75) (*Pl.'s Opp'n*). Acadia first contends that Mr. Mulcahy had a factual basis to conclude that FMI was responsible for servicing the paint mixer. *Id.* at 3–4. Acadia then pointed out that Mr. Mulcahy testified that there would have been no reason to place the wire nut in the location where it was found in the paint mixer. *Id.* (citing Attach. 7, *Dep. of John J. Mulcahy, P.E.* 60:15–18). Acadia also attached a portion of Mr. Mulcahy's deposition testimony in which he reviewed the contents of the preventative maintenance manual and agreed that in following the preventative maintenance requirements, a service technician would be required to check the machine's circuits and would have to remove the back of the paint mixer and access various areas of the machine to do so. *Id.* 61:23–63:23.

### C. FMI's Reply

FMI replied on April 20, 2016. *Def.'s Reply Mem. in Supp. of Mot. to Exclude Test. of John Mulcahy* (ECF No. 76). After reiterating its previous arguments, FMI notes that Mr. Mulcahy had stated he had "no way of knowing whether the wire nut was present in the Accutinter at any time that FMI was doing maintenance on it."

---

[1] In its motion, FMI also observed that in Mr. Mulcahy's initial report, he opined that the cause of the fire was a defective motor and that he later retracted that opinion and issued a second report in which he agreed with defense experts that the wire nut was the cause of the fire. *Def.'s Mot.* at 1–2. At a Local Rule 56(h) conference on August 26, 2016, FMI agreed that Mr. Mulcahy's change of opinion would not be a ground to exclude his opinion, and it is not pressing that part of its motion.

*Id.* at 2. Furthermore, FMI argues that Mr. Mulcahy conceded that "he does not have any expertise regarding maintenance of an Accutinter or whether a technician would have seen the wire nut while doing routine maintenance." *Id.*

### III.  DISCUSSION

Under Federal Rule of Evidence 702, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, (b) the testimony is based on sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case. FED. R. EVID. 702. FMI focuses on two issues: first, whether Mr. Mulcahy has sufficient facts to express his opinions, Rule 702(b), and second, whether he has the requisite expertise to express his opinions and, relatedly, whether his opinions are properly the subject of expert testimony. Rule 702(a), (c).

#### A.  Installation

To place Mr. Mulcahy's proffered opinions in context, Acadia is claiming that FMI must have negligently serviced the paint mixer by installing the wire nut and that it should have noticed the improperly-installed wire nut when it performed routine service of the machine. To prove that FMI must have installed the wire nut, Acadia points to the testimony of an employee of the hardware store that neither he nor any of the other employees performed any service to the paint mixer other than

4

routinely cleaning the nozzles and daily purging the machine to keep the tints full. *Pl.'s Opp'n.* Attach. 6, *Dep. of Hamilton Laurent* 37:9–21, 38:6–16. The employee testified that the preventive maintenance people took off the front panels of the machine when they inspected it. *Id.* 39:18–23. Acadia also proffers that Eldredge Lumber not only had purchased this paint mixer from FMI, but also had a Preventative Maintenance Agreement with FMI from the purchase date to the date of the fire, and that FMI and its agents, Green Technical Services, were the only individuals who serviced the paint mixer. *Pl.'s Opp'n* at 3.

FMI vigorously disputes some of this foundational evidence. It points to a two-year gap during which it asserts there was no Preventive Maintenance Agreement between Eldredge and FMI, to the involvement of Green Technical Services as a separate potential culprit, and to the absence of evidence that the wire nut was even present when FMI last inspected the machine. *Def.'s Reply in Supp. of Mot. to Exclude Test. of John Mulcahy* at 3–4 (ECF No. 75) (*Def.'s Reply*). Acadia replies that Green Technical Services was acting as the agent for FMI in performing preventative maintenance.

Regarding this first issue—whether FMI was in fact responsible for the installation of the wire nut—it strikes the Court that this factual dispute has nothing to do with Mr. Mulcahy's expert opinion. Mr. Mulcahy is not in a position to testify about who installed the wire nut. He has no personal or professional knowledge of those contested facts. Nor is he expressing an expert opinion as an engineer that FMI as opposed to some other entity installed the wire nut. On these issues, Mr. Mulcahy

5

has only expressed the professional opinion that the wire nut caused the fire and that the installation of the wire nut was improper.[2]

Under Rule 703, an expert is allowed to assume facts in forming an expert opinion through means other than personal perception. FED. R. EVID. 703; *Newell Puerto Rico, Ltd. V. Rubbermaid Inc.* 20 F.3d 15, 21 (1st Cir. 1994) ("Federal Rule[]…703 allow[s] an expert to present scientific or technical testimony in the form of opinion based on facts or data perceived *or made known to* the expert before or at trial") (emphasis added) (footnotes omitted) (internal quotation marks omitted). Rule 703 requires that a court perform a gatekeeping function to ensure that "there is sufficient, credible evidence that experts do rely on the specified types of sources in formulating their opinions." *United States v. Corey*, 207 F.3d 84, 89 (1st Cir. 2000). Here, it remains to be seen whether a jury resolves the underlying facts in favor of Acadia or FMI regarding who likely installed the wire nut, but the Court will not exclude Mr. Mulcahy's opinion on the cause of the fire on the assumption that the jury will find these contested facts in favor of FMI.

### B. Servicing

By contrast, Mr. Mulcahy has expressed an opinion as to whether someone servicing the paint mixer would observe the wire nut if the person were following the service protocol described in the Preventive Maintenance Manual. FMI objects to the

---

[2] The Court wonders whether there is really a dispute between the parties as to whether the installation of the wire nut was an act of negligence. The parties seem to agree that the wire nut caused the fire and it seems that the installation of the wire nut was unconventional at best. The real questions here seem to be whether Acadia can prove that FMI installed the wire nut and whether, if it did not install the wire nut, FMI should have observed and corrected the installation during routine servicing.

opinion on the ground that it is not properly the subject of expert testimony. The Court disagrees. In general, expert testimony is admissible if it concerns matters beyond the understanding of the average person. 4 Mark S. Brodin, Joseph M. McLaughlin, Jack B. Weinstein & Margaret A. Berger, Weinstein's Fed. Evidence § 702.03[1] (2nd ed. 2016). Here, Mr. Mulcahy opined that a person standing in front of the machine and performing the preventive maintenance protocol described in the manual would likely observe the wire nut. His knowledge of the wiring of the machine, the exact location of the wire nut, and the contents of the preventive maintenance protocol, when combined, are consistent with his expertise and, in the Court's view, would be helpful to the jury in resolving the issues before the Court.

## IV. CONCLUSION

The Court DENIES Fluid Management, Inc.'s Motion to Exclude Testimony of Plaintiff's Expert John Mulcahy (ECF No. 73).[3]

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 30th day of August, 2016

---

[3] Although at the Local Rule 56(h) conference, the Court thought this case might implicate the doctrine of res ipsa loquitur and its companion products liability doctrine, the malfunction theory, upon reflection, neither theory seems to fit. These theories typically come into play when there has been an unexplained accident that, in the ordinary course, would not have taken place absent negligence on the part of the defendant. *Wellington Assocs., Inc. v. Capital Fire Protection Co., Inc.*, 594 A.2d 1089, 1092 (Me. 1991); *Walker v. Gen. Elec. Co.*, 968 F.2d 116, 120 (1st Cir. 1992). Here, the parties appear to agree as to the cause of the fire. Instead, the issues here appear to be simple matters of proof: whether Acadia can satisfy the jury that it is more likely than not that FMI installed the wire nut and, if not, whether it can satisfy the jury that it is more likely than not that FMI should have noticed and corrected the wire nut in its routine maintenance of the paint mixer.